UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THE UNITED STATES OF AMERICA

v.

TYSHAWN BROWN,

                              Defendant.

_____

1:19-CR-222 EAW (MJR)


DECISION AND ORDER


This case has been referred to the undersigned by the Hon. Elizabeth A. Wolford pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions.  (Dkt. No. 3)

## BACKGROUND

On October 29, 2019, a federal grand jury in the Western District of New York returned an indictment against Tyshawn Brown ("defendant" or "Brown") charging two counts of Possession with Intent to Distribute, and Distribution of, Cocaine, in violation of Sections 841(a)(1) and 841(b)(1)(C) of Title 21 of the United States Code.  (Dkt. No. 1) The charges arise from the controlled purchases of narcotics between Brown and a confidential source on June 21, 2018 and July 31, 2018.

Presently before the Court are Brown's pre-trial motions for: (1) discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure; (2) early disclosure of witness statements; (3) disclosure of informant identities; (4) the immediate production of *Brady/Giglio* material; (5) disclosure of evidence pursuant to Rules 404(b), 608 and 609

of the Federal Rules of Evidence; (6) preservation of rough notes; and (7) leave to file additional motions.   (Dkt. Nos. 10 and 11)   The Government filed responses to defendant's pretrial motions on January 21, 2020, which included a request for reciprocal discovery.  (Dkt. No. 13)  The Court heard oral argument on February 19, 2020, at which time it ordered the Government to submit a supplemental filing regarding its search for *Brady* material.  The Government submitted the supplemental filing on March 18, 2020 (Dkt. No. 20) and defendant filed a response on April 1, 2020 (Dkt. No. 22).   Also on March 18, 2020, the Government filed a motion for reconsideration of the Court's previous order that the Government provide defense counsel with copies of the video and audio recordings of the controlled purchases pursuant to a protective order allowing defendant to view the recordings with counsel.   (Dkt. No. 19)   Defendant filed a response in opposition on April 1, 2020.   (Dkt. No. 21)   The Court's decisions as to defendant's omnibus discovery demands as well as the Government's motion for reconsideration and request for reciprocal discovery are set forth in detail below.

## DISCUSSION

1.    *Rule 16 Discovery*

Brown moves for discovery and inspection pursuant to Federal Rule of Criminal Procedure 16.  (Dkt. No. 10, pgs. 3-5)  Rule 16(a) requires the Government to disclose certain evidence and information upon request of a defendant.   While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the Government's case against him."  *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974).  Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded or oral statements in the possession of the Government;

(2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the Government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Fed. R. Evid. 702, 703 and 705. *See* Fed R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal Government documents made by an attorney for the Government or other Government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Here, Brown specifically requests: (1) property receipts; (2) DEA-6 reports; (3) photographs; (4) statements of the confidential source involved in the controlled purchases; (5) phone records; (6) Town of Tonawanda police reports; (7) any written or recorded statements of defendant; (8) the reports or results of any physical or mental examinations or scientific experiments; and (9) a written summary of any testimony the Government plans to introduce as evidence pursuant to Rules 702, 703 or 705 of the Federal Rules of Evidence.[1] (Dkt. No. 10, pgs. 3-5)

In its written responses to defendant's discovery requests, the Government states that it provided defendant with a copy of his criminal record and that defendant did not make any statements to law enforcement within the purview of Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure. (Dkt. No. 13) The Government indicates that it disclosed forensic laboratory reports of the controlled substances seized in this case, and that it will provide any additional laboratory reports upon receipt. (*Id.*) The Government further represents that it provided substantial voluntary discovery as well as any

---

[1] Brown's Rule 16 requests also included a demand for video and audio recordings of the controlled purchases on June 21, 2018 and July 31, 2018. This request is addressed separately in the next section of this Decision and Order, together with the Government's March 18, 2020 motion for reconsideration.

documents and objects required under Rule 16(a)(1)(E), and that it will continue to provide any additional discoverable materials that become available. (*Id.*) The Government represents that it will timely provide all relevant expert disclosures, including summaries of the experts' credentials and methods. (*Id.*)

During oral argument of the omnibus motions, the Court inquired as to the status of Brown's outstanding discovery requests. The Government indicated that there are no phone records or Town of Tonawanda police reports to disclose and that it has provided the only two laboratory reports in existence, both of which relate to the narcotics involved in the controlled purchases on June 21, 2018 and July 31, 2018. In response to defendant's request for the chemist's notes in relation to the laboratory reports, the Government contends that the notes are not discoverable pursuant to Rule 16. The Court agrees that Rule 16 does not require disclosure of the chemist's notes. However, should the chemist be called as a witness at trial, the notes are to be produced in accordance with the requirements of Section 3500 of Title 18 of the United States Code (the "Jencks Act").

The Government further explained, during oral argument, that defendant has been provided all property receipts except for one receipt which contains statements made by the confidential source involved in the controlled purchases to a government agent. The Government argues that statements by a confidential source are not discoverable under Rule 16, and that defendant has already been provided a DEA-6 report which summarizes these statements. Defendant counters that he is specifically seeking the unredacted post-buy statements of the confidential source to the government agent.

The Court finds that the Government is not obligated to produce statements by the confidential source at this time, including those contained in the property receipt. Indeed, a confidential source's statements do not fall under the disclosure requirements of Rule 16. *See United States v. Nieves*, 3:97-CR-238, 1998 U.S. Dist. LEXIS 20509 (Dist. Ct. Conn. Dec. 3, 1998) ("Rule 16 permits discovery only of a defendant's statements, not statements of others.") Further, the confidential source has not been named as a witness at this time and the Government is under no obligation to produce statements of individuals who at not testifying at trial. *United States v. Rigas*, 583 F.3d 108, 125-26 (2d Cir. 2009). If and when the confidential source is to be called as a witness at trial, defendant will have access to any prior statements in accordance with the Jencks Act. *See In re United States*, 834 F.2d 283, 87 (2d Cir. 1987) (district courts lack the authority to compel early disclosure of Jencks Act materials). As stated during oral argument, the Government is directed to redact the confidential source's statements from the property receipt and provide the redacted property receipt to defendant.

Based upon the representations made by the Government in their written responses and during the February 19, 2020 oral argument, and consistent with the Court's directives described above, Brown's request for discovery pursuant to Rule 16 is denied as moot. The Government is reminded that its disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c). Further, the Government is directed to comply with all requirements of expert witness disclosure contained in Federal Rule of Criminal Procedure 16(a)(1)(g), Rules 702, 703 and 705 of the Federal Rules of Evidence, and the District Court's pretrial order.

2.    _Recordings of the Controlled Buys and Motion for Reconsideration_

In his omnibus motion, Brown requested copies of all video and audio recordings related to the controlled purchases on June 21, 2018 and July 31, 2018 (the "recordings").[2] (Dkt. No. 10, pg. 3)   The Government responded that defense counsel has had the opportunity to view the recordings at the United States Attorney's Office. (Dkt. No. 13, pg. 2)   During oral argument on February 19, 2020, defense counsel requested that she be provided a copy of the recordings to view with defendant.   The Government objected to this request because the identity of the confidential source is apparent on the recordings.   After hearing argument from both parties, the Court directed the Government to provide defense counsel with copies of the recordings, subject to a protective order which would permit Brown to view or listen to the recordings but would prohibit Brown or others from being given a copy of the recordings.   The Court noted that because this case involved an in-person sale of narcotics between Brown and the confidential source, it was highly unlikely that Brown was unaware of the confidential source's identity.   The Court concluded that disclosure of the recordings here did not present the same safety concerns apparent in other cases, where the identity of the confidential source is unknown to a defendant.

The Government now moves for the Court to reconsider its prior order requiring disclosure of the recordings to defendant pursuant to a protective order.   (Dkt. No. 19) The Government requests that it instead be permitted to provide defendant with a transcript of the recordings and delay providing the recordings to defendant until thirty

---

[2] Based on the parties' representations during oral argument, there are two video recordings, one video of air surveillance, and two audio recordings, all related to the controlled purchases on either June 21, 2018 or July 31, 2018.

days prior to trial.  (*Id.*)  The Government argues that this procedure is necessary to protect the confidential source, prevent public dissemination of the recordings, avoid risk of harm to the Government's investigation, and prevent "uncharged co-conspirators being named publicly with no recourse to clear their name."  (*Id.*)

The grounds justifying reconsideration of a court's prior order include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).  The standard for granting a motion for reconsideration is strict, and such motions are generally denied.  *Stewart Park & Reserve Coalition Inc. v. Slater*, 374 F. Supp. 2d 243, 253 (NDNY 2005).  Thus, a "motion for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  *See also Analytical Surveys v. Tonga Partners*, 684 F.3d 36, 52 (2d Cir. 2012) (A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.")

Federal Rule of Criminal Procedure 16(d) grants courts the discretion to establish "conditions under which defense may obtain access to discoverable information."  *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 122 (2d Cir. 2008).  Here, the Government has failed to raise any new law or facts that would support a reconsideration of the Court's prior discovery order.  Instead, the Government continues to argue that disclosure to defendant would risk public dissemination of the recordings or expose the identities of uncharged co-conspirators.  The Court directed the recordings be

disclosed pursuant to a protective order which prevents defendant from being given copies. The protective order may also provide that defendant is to view the video with defense counsel, and that defense counsel is to ensure that defendant does not have access to his phone, the internet, or any other means of communication during the viewing. Thus, the Court finds little risk of either (1) public dissemination of the recordings or (2) public disclosure of the identities of the confidential source or any other individuals present in the videos. Likewise, the Government argues that dissemination of the video could result in the "spread of information regarding the ongoing investigation…in a manner harmful to the government." However, the Government has failed to provide any specific explanation as to how the disclosure of the recordings to only defense counsel and defendant, who appears on them, would adversely affect its investigation of this matter.

Lastly, the Court rejects the Government's continued argument that limited disclosure of the recordings is needed to protect the identity and safety of the confidential source. There is no evidence in the record that Brown, or any other individual for that matter, has threatened or otherwise tried to intimidate a witness in this case. As the Court stated during oral argument, this mater involves two face-to-face drug purchases of cocaine on two dates specified in the Indictment. Thus, it defies logic that Brown remains unaware of the identity of the confidential source. In the unlikely event that Brown is uncertain as to this individual's identity, the Court finds the Government's suggestion that it provide transcripts, as opposed to the actual recordings, to be ineffective in protecting the confidential source's identity. Indeed, a transcript of the conversation would only confirm any suspicion that defendant is certain to already possess about the individual's

identity.  Thus, the Court finds that good cause does not exist to prohibit Brown from viewing the recordings since (1) defendant is entitled to view the evidence against him and discuss it with his counsel; (2) defendant will not be given a copy of the recordings or permitted to disseminate them; and (3) it is more likely than not that defendant is already aware of the confidential source's identity.  *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) ("The party seeking a protective order…has the burden of showing that good cause exists for issuance of that order."); *United States v. Smith*, 985 F. Supp. 2d 506, 522 (SDNY 2013) (applying "good cause" standard to Rule 16(d) analysis).  For these reasons, the Government's motion for reconsideration is denied.

3.    *Witness Statements*

Brown requests the immediate disclosure of witness statements, or in the alternative, disclosure of witness statements no less than four weeks prior to trial.  (Dkt. No. 10, pgs. 5-6)

The Government has no general duty to disclose the identities of its witnesses before trial.  *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990).  Section 3500 of Title 18 of the United States Code requires that the government, on motion of defendant, disclose a government witness's prior statements that are in the government's possession and relate to the subject matter of the witness's direct testimony ("3500 material").  *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement).   A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury.   18

U.S.C. 3500(e).   Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner.  *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

The Government responds that it will disclose all 3500 material sufficiently prior to trial to allow defendant adequate time to prepare and, in accordance with the District Court's pretrial order, to permit the Court to conduct the trial in an orderly and efficient manner.  (Dkt. No. 13, pgs. 5-6)  In light of these representations, defendant's request for early disclosure of witness statements is denied as moot.

4.     *Informant Identities*

Brown moves for disclosure of the identities of all informants utilized by the Government in the course of its investigation.  (Dkt. No. 10, pg. 7)  Brown also seeks potential impeachment material as to these individuals.  (Dkt. No. 11, pg. 7)  The Government objects to this request on the grounds that defendant has not shown a particularized need for this information.  (Dkt. No. 13, pgs. 6-9)

The Government has a qualified privilege to withhold information concerning the names of confidential informants that it does not intend to call as witnesses.  *See Rovario v. United States*, 353 U.S. 53, 60-62 (1957) (the purpose of the privilege is to encourage citizens to report criminal activity).  The informant's privilege must give way, however, if disclosure is essential to a defense or the fair determination of the case.  *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983).  To that end, a defendant seeking the identity of a confidential informant must make some evidentiary showing as to why disclosure is significant to determining defendant's guilt or innocence.  *See United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) (explaining that defendants face a "heavy burden" of

10

establishing that disclosure is essential to the defense); *Lilla*, 699 F.2d at 105 ("this requires some demonstration that in the absence of such disclosure the defendant will be denied a fair trial"); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982) (defendant need not show that the informant's testimony would actually be helpful to the defense, but instead "the events to which a witness might testify, and the relevance of those events to the crime charged").

Brown has not provided any specific reasons as to why informant identities are material or necessary to his defense.  He does not offer an explanation of what the informants might testify about, nor does he establish its relevance to the crimes charged here.  Instead, defendant generally states that disclosure of informant information is necessary so that defense counsel may "attempt to interview them and otherwise investigate their allegations, biases, and benefits derived from cooperating with the government."  This is insufficient to meet the burden.  If and when an informant is to be called as witnesses at trial, defendant will have access to his or her identity as well as all relevant impeachment material, prior statements and notes of their interviews.   In addition, if an informant reveals exculpatory information at any time, the Government has an ongoing duty to disclose this information in time for its effective use at trial.  Finally, as noted above, this case involves two face-to-face narcotics purchases between defendant and a confidential source.  Thus, the Court finds it likely that defendant is already aware of this individual's identity.  For these reasons, defendant's motion for disclosure of informant identities is denied.

5.    _Brady Material_

Brown moves for the immediate disclosure of any favorable, exculpatory or impeachment materials pursuant to _Brady_, _Giglio_ and their progeny. (Dkt. No. 11) To that end, Brown specifically requests extensive information regarding former Drug Enforcement Agency ("DEA") Special Agent Joseph Bongiovanni. (_Id._ at pgs. 5-6) According to defendant, Bongiovanni was the lead agent on this case at the time of the controlled buys on June 21, 2018 and July 31, 2018. Defendant submits that Bongiovanni directed and communicated with the confidential source during the buys, witnessed the search of the confidential source, accepted all of the drug and non-drug evidence, relayed information to other officers during the buys, and prepared the Reports of Investigation. On October 31, 2019, over a year after the controlled buys and just a few days after Brown was indicted, Bongiovanni was indicted by the United States Attorney's Office for the Western District of New York for Conspiracy to Defraud the United States, Conspiracy to Distribute Controlled Substances, Public Officials Accepting a Bribe, Obstruction of Justice, and False Statements to an Agency of United States. (Dkt. No. 11, Exh. B; _United States v. Bongiovanni_, 1:19-CR-227) It is alleged that from 2008 through in or around June of 2019, Bongiovanni received $250,000 in bribes from drug traffickers in exchange for protection and assistance in the course of his employment as a DEA agent in Buffalo, New York (the "Bongiovanni case"). It is further alleged that in the course of committing these crimes, Bongiovanni lied to other law enforcement officials regarding ongoing investigations; made false entries in DEA-6 reports and other official documents; and provided information about investigations, witnesses and confidential sources to drug traffickers. In light of these facts, defendant seeks disclosure of: (1) Bongiovanni's

personnel file, disciplinary reports and psychological assessments; (2) investigatory files from law enforcement agencies such as the DEA or FBI as well as the United States Attorney's Office regarding the Bongiovanni case; (3) memorandum and reports regarding Bongiovanni's alleged misconduct; (4) specific instances where Bongiovanni was dishonest in his representations to other members of law enforcement or otherwise engaged in official misconduct; (5) information regarding Bongiovanni's relationship to the confidential source used in this case, including whether they had worked together in the past; (6) grand jury minutes from this case as well as the Bongiovanni case; and (7) the agency file for the confidential source used during the controlled purchases on June 21, 2018 and July 31, 2018.  (Dkt. No. 11, pgs. 5-6)

The Government responds that it is aware of its obligations and responsibilities under *Brady* and acknowledges its continuing duty under *Brady* to produce pertinent material, if and when it is made aware of it.  (Dkt. No. 13, pgs. 12-15)  The Government also agrees to provide all relevant impeachment *Giglio* material in accordance with the schedule set by the District Court prior to trial, and no later than when the Government produces and delivers 3500 material.  (*Id.*)  The Government submits that it is not aware of any exculpatory material related to Bongiovanni and that it does not anticipate calling him as a witness at trial.  (*Id.* at 14)  Defendant counters that these representations are insufficient.

The Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even when no affirmative request has been made.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant,

but also information that impeaches the credibility of Government witnesses. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence may be material for *Brady* purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence. *United States v. Gill*, 297 F.3d 93, 104 (2d Cir. 2002). "[A]s a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

During oral argument, counsel for the Government represented that she communicated with the Assistant United States Attorney involved in the Bongiovanni case and inquired as to the existence of any *Brady* material with respect to this case. Counsel was told that there is no *Brady* material in the Bongiovanni case file pertaining to Brown. Defendant counters that this response is inadequate because the *Brady* material at issue here is not limited to potential misconduct committed by Bongiovanni in the course of his work on this case. Stated another way, defendant claims that because Bongiovanni was the lead case agent on this matter, evidence that he generally engaged in criminal conduct, lied to other law enforcement officials, created false DEA-6 reports, or accepted bribes in other cases, before or around the time he was investigating Brown, is, in and of itself, *Brady* material, regardless of whether Bongiovanni engaged in these actions

specifically with respect to his investigation of Brown or participation in the controlled purchases.    Thus, defendant argues that he should have access to, *inter alia*, Bongiovanni's personnel files, DEA and FBI files as to Bongiovanni, and evidence in the Bongiovanni case.  The Court disagrees.

As stated above, the Government's disclosure obligations under *Brady* encompass both exculpatory material and information that could be used to impeach a government witness.  *See Coppa*, 267 F.3d at 135.  It is clear that if the Government were to call Bongiovanni as a witness at Brown's trial, the information sought by Brown, including instances of Bongiovanni's official misconduct, lying, bribery, or other criminal acts, is relevant *Giglio* material that the Government would be required to disclose to Brown for impeachment purposes.   *See United States v. Kiszewski*, 877 F.2d 210, 215 (2d Cir. 1989) (district court's refusal to compel production of testifying officer's personnel file for *in camera* inspection was in error where file contained allegations of misconduct and "the law is clear that *Brady* and its progeny require that the government disclose material impeachment evidence [since] impeachment of a witness can make the difference between acquittal and conviction."); *Milke v. Ryan*, 711 F.3d 998, 1016-19 (9th Cir. 2012) (granting habeas relief where state failed to disclose personnel records containing evidence of extensive misconduct and dishonesty by a police detective who was primary witness at trial); *United States v. Hargrett*, 96-CR-17, 1996 U.S. Dist. LEXIS 14273, *27-28 (NDNY Sept. 25, 1996) (officers' personnel files "sensitive though they may be, are nonetheless discoverable if they contain information tending to impeach the agent or officer's testimony.")   Here, the Government maintains that it does not intend to call Bongiovanni as a witness at trial.  Thus, the Government does not have an obligation to

produce these documents and records as impeachment material at this time.  Should this position change and Bongiovanni be named as a government witness, the Government would be obligated to produce all relevant impeachment or *Giglio* material.[3]

The Court must also consider whether the information sought by defendant is exculpatory, which *Brady* defines as "evidence favorable to the accused" and "material either to guilt or punishment."  *Brady*, 373 U.S. at 87.  To be sure, information that Bongiovanni engaged in misconduct or criminal activity *in the course of investigating Brown or directing the controlled purchases charged here* is evidence favorable to Brown which must be disclosed, since it is directly relevant to the propriety and integrity of the government's investigation against him.  However, information that Bongiovanni engaged in misconduct or criminal activity during his investigation *of other criminal cases* is neither favorable to Brown nor material to his guilt.  Indeed, since Bongiovanni will not be called as a witness to present evidence against Brown and the Government represents that there is no evidence that Bongiovanni committed misconduct in the course of *these* controlled buys or other aspects of *this* investigation, Bongiovanni's actions in other cases are not relevant as to whether Brown committed the crimes charged in the Indictment.[4] *See United States v. Bryant*, 520 Fed. Appx. 11, (2d Cir. 2013) (defendant not entitled to a new trial based on evidence of the forensic chemist's termination for misconduct where defendant could not establish that evidence of the chemist's misconduct in other cases, if introduced at his trial, would have resulted in his acquittal); *Bastidas v. City of Los*

_____

[3] It is noted that defendant has requested the agency file for the confidential source used in the controlled purchases.  Should the Government call the confidential source as a witness at trial, defendant would be entitled to all relevant impeachment or *Giglio* material, as well as any 3500 material, at that time.

[4] Defense counsel argues that information that Bongiovanni knowingly prepared false DEA-6 reports in other cases is especially relevant because he prepared the DEA-6 reports in this case.  However, based on the Government's representations, there is no evidence or information that such misconduct occurred in the preparation of DEA-6 reports here.

*Angeles*, 2006 U.S. Dist. LEXIS 96770, *13-14 (C. D. Cal. Feb. 21, 2006) (noting that plaintiff "fails to cite any case law that establishes a legal duty imposed by *Brady* to advise all criminal defendants arrested by an officer of possible misconduct committed by the officer or other officers in an unrelated matter.")

During oral argument, defense counsel further argued that the information sought is material since the fact that the lead case agent in the investigation of Brown was simultaneously engaged in a long-standing criminal scheme involving drug distribution, bribery, lying in the course of investigations and other types of official misconduct, could "potentially put the case in a different light for the jury."  Defense counsel maintains that even if Bongiovanni will not be called as a witness at trial, she intends to introduce evidence of the charges against him and to question any testifying officers or agents as to their knowledge, during the time of the Brown investigation, of Bongiovanni's misconduct and criminal activity.  The Court finds that this assertion by defense counsel does not implicate defendant's rights under *Brady*, but instead raises an issue as to whether the pending charges in the Bongiovanni case are admissible trial evidence or permissible cross-examination material of testifying officers in this case.  Indeed, the crux of the evidence that defense counsel seeks to introduce, namely the pending indictment against Bongiovanni and the nature of the allegations against him, is accessible in publicly filed documents and therefore does not qualify as *Brady* material.  Moreover, it is the providence of the District Court to determine, at the time of trial, whether this type of evidence is admissible as well as the proper scope of any cross-examination or impeachment of testifying witnesses.  Indeed, this Court makes no finding as to whether

the charges pending against Bongiovanni, and the facts surrounding those charges, would be admissible in a trial against Brown on this Indictment.

For these reasons, and given the Government's representations as to its search for any existing *Brady* material, defendant's motion to compel the production of *Brady/Giglio* material is denied as moot.  The Court notes that during oral argument of this matter, it instructed counsel for the Government to submit a written statement indicating that the Government searched the files in both this case and the Bongiovanni case and that (1) there is no *Brady* material in either and (2) that Brown's name does not appear anywhere in the Bongiovanni case file.  The Court specifically stated, "I'm going to require you to provide some kind of statement, written statement to the Court, that everything you have in this case and everything you have in the Bongiovanni case has been searched and if his name – if the defendant's name comes up in any of the Bongiovanni case, I want to know that.  And…I'm going to ask you to provide it to me so I can at least do an *in camera* inspection of it to see if it's, in fact, exculpatory of the defendant."  (Dkt. No. 17, pg. 25)  On March 18, 2020, counsel for the Government filed an affidavit stating that "[i]n accordance with the Court's directive, the Government has searched both everything in the government's possession regarding this case as well as the Bongiovanni case [and] did not find any *Brady* material related to defendant Brown."  (Dkt. No. 20)  Indeed, counsel did not specifically affirm that Brown's name does not appear in the Bongiovanni case file.  However, the Court will assume, based upon its previous directive and the general representations in counsel's affidavit, that the Government has complied with the Court's instructions and that Brown's name does not appear anywhere in the Bongiovanni case file.  Should the Government later uncover the

appearance of Brown's name in the Bongiovanni case file, the Government shall disclose this discovery to the Court. Consistent with *Coppa*, the Government shall also timely disclose any *Brady* and *Giglio* material to defendant. *See United States v. Padovani*, 14-CR-00224, 2016 WL 5402696, at *4 (WDNY Sept. 28, 2016).

6.   *Disclosure of Grand Jury Transcripts*

As indicated above, Brown included, in his request for *Brady* materials, a motion to disclose grand jury minutes from this case as well as from the Bongiovanni case. (Dkt. No. 11, pg. 5) The Government objects to this request. (Dkt. No. 13, pg. 15-16)

The Court finds that defendant is not entitled to grand jury minutes from either this case or the Bongiovanni case. For the reasons stated above, the minutes are not discoverable under *Brady*. Further, a defendant is not entitled to inspect grand jury minutes and evidence without producing "concrete allegations of government misconduct." *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994). Defendant has not made any such allegations here with respect to either matter. *See United States v. Ulbricht*, 858 F.3d 71, 106-107 (2d Cir. 2017) (to be entitled to disclosure of grand jury proceedings, a defendant must show a particularized need that outweighs the strong government and public policy interests in the secrecy of grand jury proceedings); *United States v. Ayeki*, 289 F. Supp. 2d 183, 186 (D. Conn. 2003) ("grand jury proceedings carry a presumption of regularity, and a review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct.") Because defendant has not made a sufficient showing, his request for grand jury minutes is denied.

7.    _Federal Rules of Evidence 404(b), 608 and 609_

Brown moves for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). (Dkt. No. 10, pg. 7-8)  Brown also moves for pretrial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 608 and 609.  (_Id._)  The Government states that it will disclose any evidence in its possession which might fall under the ambits of Rules 404(b), 608, and 609 when ordered to do so by the trial court.  (Dkt. No. 13, pg. 9)

The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant.  _See_ Fed. R. Evid. 404(b).  Based upon the Government's representation that it will disclose Rule 404(b) evidence and impeachment evidence when required to do so by the District Court, Brown's motion is denied as moot.  The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608 and 609 is left to the determination of Judge Wolford at the time of trial.

8.    _Preservation of Rough Notes_

Brown moves for an order requiring all government agents and officers to retain and preserve all rough notes taken in the course of the investigation.  (Dkt. No. 10, pgs. 8-9)  The Government responds that it has no objection to defendant's request that government agents retain notes taken during the investigation. (Dkt. No. 13, pg. 11) The Court grants defendant's motion and directs the Government to arrange for the preservation of all rough notes.

9. _Leave to File Additional Motions_

Brown moves to reserve the right to make further motions as necessary. (Dkt. No. 10, pg. 9)  To the extent that defendant intends to bring motions based upon new information or evidence that has not yet been disclosed, his request for leave to file additional motions is granted.  To the extent that defendant intends to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendant's request is denied without prejudice to bring the motion upon a showing of good cause for the untimely filing.

10. _Government's Request for Reciprocal Discovery_

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of the defendant and which the defendant intends to introduce as evidence at trial, as well as the results or reports of any physical or mental examinations or scientific tests or experiments made in connection with the case. (Dkt. No. 13, pg. 17)  The Government also requests that, pursuant to the District Court's pretrial order, defendant provide a summary of the testimony he intends to introduce pursuant to Rules 702, 703 or 705 of the Federal Rules of Evidence.  (_Id._)  The Government's motion for reciprocal discovery is granted, and defendant is reminded that his disclosure obligations continue up through and during trial. _See_ Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, defendant Tyshawn Brown's pre-trial motions (Dkt. Nos. 10 and 11) are decided in the manner set forth above.  The Government's motion for reconsideration (Dkt. No. 19) is denied and its request for reciprocal discovery (Dkt. No. 13) is granted.  The parties are directed to contact Judge Wolford's chambers to schedule a trial date.


**SO ORDERED**.



Dated:       April 27, 2020
             Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge